**In re ROTH AMERICAN, INC., Debtor.**

**Bankruptcy No. 5–88–00056.**

United States Bankruptcy Court,
M.D. Pennsylvania.

Oct. 27, 1989.

See also, Bkrtcy., 90 B.R. 94.

Arthur Silverblatt, Wilkes–Barre, Pa., for Gurbst.

Robert C. Nowalis, Wilkes–Barre, Pa., for Roth American.

John J. Thomas, Wilkes–Barre, Pa., for United Rehabilitation.

David S. Brady, Office of U.S. Trustee, Harrisburg, Pa., for U.S. Trustee.

Jeffrey Baddely, Cleveland, Ohio, for Official Unsecured Creditors Committee.

Patrick J. Szymanski, Baptiste & Wilder, P.C., Washington, D.C., for Teamsters Local 401.

### OPINION AND ORDER

THOMAS C. GIBBONS, Bankruptcy Judge:

This proceeding is before the Court on an "Application for Court Order of Payment of Amount Due under Executory Contract as an Administration Expense." The prayer in the application requests this Court to declare a deferred compensation agreement entered into between Herbert S. Gurbst (hereinafter "Gurbst") and the debtor, an assumed executory contract with the balance due Gurbst under the agreement recognized as a priority administrative expense. A variety of objections were filed to the application. For the reasons provided herein, we find that the deferred compensation agreement is not an executory

contract and further that Gurbst is not entitled to any payments under the agreement as an administrative priority expense of the estate.

The facts surrounding the instant controversy are as follows. On or about August 11, 1975, Gurbst and the debtor's predecessor entered into a deferred compensation agreement. In short, this agreement provided that Gurbst would receive a total amount of $150,000, paid by 180 equal consecutive monthly installments commencing a month following his retirement or any other date mutually agreed to by the parties. The agreement also provided, inter alia, that Gurbst could not, during his employment or thereafter, and so long as payments were due him thereunder and without the consent of the company, enter into competition with the company. If Gurbst did compete he would forfeit any rights to the payments under the agreement. The instant agreement also expressly provided that it was not an employment agreement.

Gurbst retired on October 31, 1987 and received two monthly payments of $900 each made in November and December of 1987. Thereafter, on February 1, 1988, Roth American, Inc. (hereinafter "debtor") filed its petition for reorganization under chapter 11. Gurbst filed the instant application with this court claiming that the deferred compensation agreement was actually an executory contract which was impliedly assumed by the chapter 11 debtor. Additionally, Gurbst claims he performed valuable work on behalf of the debtor corporation subsequent to the filing of the petition and that the balance due under the executory contract should be recognized by this court as an administrative expense with the balance of approximately $148,200 declared immediately due and payable.

Objections were filed to this application by the following parties in interest: the debtor, United States Trustee's Office, the Unsecured Creditors Committee, United Rehabilitation Services, and Local Union 401. The objectors argue, inter alia, that the deferred compensation agreement is not an executory contract, but, if the deferred compensation agreement is declared

an executory contract, it can be assumed by the chapter 11 debtor up to and including the time of confirmation of the plan and, therefore, Gurbst application is premature. Furthermore, the objectors assert Gurbst never made application to this court to be appointed as a professional working on behalf of the estate. Finally, they argue that, at best, Gurbst is the holder of a claim that arose prepetition and, therefore, is entitled to no priority because there was no showing that the alleged services he performed on behalf of the estate or the assumption of the contract would be for the necessity and the preservation of the estate. Mr. Gurbst replies that the agreement is executory in nature and that he provided substantial services to the estate by participating in the collection of accounts receivable and other actions taken on behalf of the corporation which services are an administrative expenses because they benefited and preserved the estate. Mr. Gurbst also claims that the deferred compensation agreement is very much like an agreement for severance pay and should be accorded priority as an administrative expense.

## DISCUSSION

The first issue is whether or not the deferred compensation agreement in question is indeed an executory contract under the Bankruptcy Code. We direct the parties attention to *In re Placid Oil Company*, 72 B.R. 135, 137 (Bankr.N.D.Tex.1987) which provides the following:

"[1] In analyzing contracts under Bankruptcy Code Section 365, courts have generally employed the Countryman definition of an executory contract, i.e. a contract under which the obligations of both the bankrupt and the other party remain so far unperformed that failure of either to complete performance would constitute a material breach excusing performance of the other. Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn.L.Rev. 439, 460 (1973). The test has been applied in various situations where either a duty to perform or to forebear on the part of either party would, if breached,

constitute a material default. *See Lubrizol Enterprises v. Richmond Finishers, Inc.,* 756 F.2d 1043 (4th Cir.1985); *Matter of B. Siegel Co.,* 51 B.R. 159 (Bankr. E.D.Mich.1985); *In re O.P.M. Leasing Services, Inc.,* 23 B.R. 104 (Bankr.S.D.N.Y.1982), and cases cited therein. Even a contingent obligation of each of the parties, prior to the expiration of the contingency, is sufficient to render a contract executory when a breach of the obligation would be material. *Lubrizol,* 756 F.2d at 1046. The common element of all executory contracts appears to have been defined as reciprocal obligations between the parties. *National Labor Relations Board v. Bildisco & Bildisco,* 465 U.S. 513, 522 n. 6, 104 S.Ct. 1188, 1994 n. 6, 79 L.Ed.2d 482 (1984). In contrast, an executed contract is one in which the arrangement is already performed. *In re American Magnesium Co.,* 488 F.2d 147 (5th Cir.1974).

The objectors cite the case of *In re Sentle Trucking Corporation* at 93 B.R. 551 (Bankr.N.D.Ohio 1988) for the proposition that a deferred compensation agreement is not considered by the bankruptcy courts as an executory contract. This, however, is an oversimplistic reading of the holding in the *Sentle* case. The *Sentle* court did not hold that all deferred compensation agreements are not executory contracts but did reach that conclusion in that particular case. The court recognized the legal principle enunciated in the case of *Matter of Smith Jones,* 26 B.R. 289 (Bankr.Minn. 1982) that even though an obligation of one of the parties may be contingent it does not necessarily prevent a contract from being considered executory under the Bankruptcy Code. In the *Sentle* case, as in this case, the obligations of the petitioner were non-existent because of the cessation of any business activity. While the *Sentle* case is a chapter 7, it is similar to the instant case which is a liquidating chapter 11. Here, the debtor has substantially sold off its primary assets and has ceased doing business. The only duty remaining to be performed in the instant case is the debtor's obligation to make further payments under the deferred compensation agreement. Gurbst, on the other hand, has no duties or obligation to perform. Consequently, we find that the instant agreement is not executory under § 365 of the Code.

Gurbst also argues that the agreement was impliedly assumed by the debtor. We find no testimony or evidence was submitted at the time of hearing to support this contention. In fact, the testimony regarding what services were actually performed by Gurbst on behalf of the chapter 11 estate and the benefit the estate received from those services is at best sketchy and uncertain. Normally, contracts are assumed following the filing of a motion and order submitted to the court for approval. See *In re Middleton,* 3 B.R. 610 (Bankr.E.D.Pa.1980) and *In re Marple Publishing Company, Inc.,* 20 B.R. 933 (Bankr.E.D.Pa.1982). Neither a motion nor order for approval of employment were submitted on Gurbst's behalf.

The next issue is whether or not the deferred compensation agreement can be likened to a severance pay agreement thus rendering all payments due under the agreement as a § 503(b) administrative priority expense. Again, we note that Gurbst failed to make any application either on his own behalf or through the chapter 11 debtor to have himself appointed as a professional to work on behalf of the estate.

"An expense is administrative only if it arises out of a transaction between the creditor and the bankrupt's trustee or debtor-in-possession and only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession and the operation of the business. A debt is not entitled to priority simply because the right to payment arises after the debtor-in-possession has begun managing the estate.

See *In re Amarex,* 853 F.2d 1526 (10th Cir.1988) (citations omitted).

Mr. Gurbst, however, relies on the case of *In re Miami General Hospital, Inc.,* 89 B.R. 980 (S.D.Fla.1988) to support his argument that his deferred compensation agreement is actually a contractual severance

pay agreement and that upon termination of employment, all payments due him under the agreement somehow became an administrative expense in this chapter 11 case. Unlike the instant case, the trustee in the *Miami General Hospital* case testified that the employment of the petitioner was essential to the continued operation of the chapter 11 debtor. Additionally, the employment agreement between the petitioner and the hospital provided that upon severance of the employment relationship, the severance pay would become due and owing to the petitioner. The instant agreement is not an employment contract nor can it be likened to an agreement providing for ˋseverance pay. Even giving Mr. Gurbst's argument the benefit of the doubt and likening the instant deferred compensation agreement to one as an agreement for severance pay entitled to be paid in its entirety as an administrative expense, we find that Mr. Gurbst's argument again fails because "the obligation to pay severance pay as administrative expense entitled to priority rest on the basis that severance pay is compensation for the hardship which all employees, regardless of their length of service, suffer when they are terminated, and that it is therefore 'earned' when the employees are dismissed.... Indeed, it appears to be the general rule that when severance pay, like vacation pay, represents compensation from the employee's past services, it is not an administrative expense entitled to priority." See *In re Amarex, supra* citing *Matter of Jartran,* 732 F.2d 584, 590 n. 6 (7th Cir.1984); *Matter of Pacific Far East Line, Inc.,* 713 F.2d 476, 478 (9th Cir.1983); *In re Health Maintenance Foundation,* 680 F.2d 619, 621–22 (9th Cir.1982); *In re Mammoth Mart,* 536 F.2d 950, 955 (1st Cir.1976); *Denton & Anderson Co. v. Induction Heating Corp.,* 178 F.2d 841 (2d Cir.1949); *In re St. Louis Globe–Democrat, Inc.,* 86 B.R. 606 (Bankr. E.D.Mo.1988).

The agreement in question does not contemplate severance pay. Mr. Gurbst retired two months prior to the filing of the bankruptcy. Also, the agreement provides that the Board of Directors of the company recognized that he had performed his services with "ability and distinction" and further, that the company desired to reward and retain his services and assist him in providing for contingencies of retirement.

The expenses for compensation to employees of the trustee or the debtor-in-possession are expressly entitled to priority under § 503(b)(1)(A) if they are for the actual necessary cost and expenses of preserving the estate. *In re Miami General Hospital, Inc.* citing *Collier on Bankruptcy,* ¶ 503.04[1][a][iii] at 503–28 (1988 Ed.). A trustee, or a debtor-in-possession, in an effort to preserve the estate, and as an incident of the operation of the business, may hire or fire employees in order to perform those duties. Severance pay is one way to pay an employee at termination in lieu of notice. See *In re Miami General Hospital, Inc.,* at 984. If a presumption is made that the trustee chose to terminate an employee without notice as part of the administration of the chapter 11 reorganization, then the severance pay in lieu of notice can be considered a cost of administration. See *In re Miami General Hospital, Inc.,* at 984 citing *Matter of Health Maintenance Foundation,* 680 F.2d 619, 629 (9th Cir.1982). In this case, Mr. Gurbst was not an employee at the time of the commencement of this chapter 11 case and had, in fact, retired two months prior to the filing of the petition.

Consequently, based on the evidence adduced at trial and a review of the agreement in question, we find that the deferred compensation agreement is not an executory contract as contemplated by § 365 of the United States Bankruptcy Code, nor does it take the form of a severance pay agreement between an employee and employer. We also find Gurbst is not entitled to receive administrative priority payments pursuant to 11 U.S.C. § 503.

Finally, we note Mr. Gurbst is in the position as any other unsecured creditor of the debtor and may file a claim and participate in any possible future distribution to creditors in this case pursuant to a confirmed chapter 11 plan.

This opinion and order constitutes the court's findings of fact and conclusions of

law in the above matter pursuant to Bankruptcy Rule of Procedure 7052 and Federal Rule of Civil Procedure 52.

IT IS SO ORDERED.